IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| MARSHA M. SUMNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 6:12-CV-01471-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.,

Plaintiff Marsha Sumner appeals the Commissioner's decision denying her concurrent applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Sumner filed her applications in February 2009 alleging disability beginning in July 2007, when she injured her back in a slip and fall accident. She alleged disability due to back pain and arthritis in the neck and shoulders. Admin. R. 145, 175. At the hearing, Sumner alleged mental impairments from depression in addition to the physical impairments identified in her written disability report. Admin. R. 53, 55.

The ALJ applied the sequential disability determination process described in 20 C.F.R. sections 404.1520 and 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found that degenerative disease of the cervical and lumbar regions of the spine and a depressive disorder limited Sumner's ability to work. Admin. R. 13-14. The ALJ found that, despite her impairments, Sumner retained the residual functional capacity ("RFC") to perform light unskilled work that does not require overhead reaching, provides the option to sit or stand at will, and does not involve more than limited climbing or crawling. Admin. R. 15.

The vocational expert ("VE") testified that a person having Sumner's RFC and vocational factors could perform the activities required in light, unskilled occupations such as small product assembler, electronics worker, and office helper, representing hundreds of thousands of jobs in the national economy. Admin. R. 84-85. The ALJ concluded that Sumner was not disabled within the meaning of the Social Security Act. Admin. R. 22.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under

2 - OPINION AND ORDER

this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

I.    <u>Claims of Error</u>

Sumner contends the ALJ failed to assess her RFC accurately because she improperly discredited Sumner's subjective statements, improperly assessed her mental limitations, and failed to consider the effects of her obesity and knee impairment. Sumner seeks a remand for an immediate award of benefits.

II.    <u>Credibility Determination</u>

In her disability report, Sumner alleged she became disabled in July 2007 when she injured her back in a fall. She said that arthritis in her neck and shoulders and bulging discs in her lumbar spine caused chronic pain and left her unable to lift more than 20 pounds occasionally. After walking five minutes, she had to sit and rest for ten minutes. Admin. R. 175, 187. She alleged that her depression caused her to cry constantly. Admin. R. 189.

At the administrative hearing, Sumner testified that she quit working in January 2009, because it was a very fast paced job and she "felt I mentally couldn't do it." Admin. R. 53. Sumner said she could sit for 45 minutes at a time and stand for about 15 minutes at a time. She had pain in her knee after standing too long, but did not receive knee treatment. She did not have full range of motion in her right hand and arm. She spent 90 percent of a typical day lying down. Sumner denied that her doctors recommended exercise. Admin. R. 57-61.

The ALJ accepted some of Sumner's statements. For example, she accepted that Sumner was limited to light lifting, did not have the range of motion to engage in overhead reaching, and had to change positions at will to alleviate pain from sitting or standing too long. The ALJ found Sumner was not fully credible, however, regarding the additional limiting effects of her symptoms, particularly her claims that she must lie down 90% of the day and that she cannot do any work. Admin. R. 16.

The ALJ found that the medical evidence supported impairments that could reasonably be expected to produce some of Sumner's alleged symptoms, and did not identify affirmative evidence of malingering. Admin. R. 16. Under such circumstances, an ALJ must assess the credibility of the claimant regarding the severity of symptoms. An adverse credibility determination must include specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

4 - OPINION AND ORDER

The ALJ's decision demonstrates that she considered all the evidence relating to the proper factors for evaluating credibility. She discussed the medical evidence at length and found that the mild objective findings did not support the extreme limitations Sumner claims. Admin. R. 17. For example, diagnostic imaging showed degenerative changes in the spine, but consistently failed to demonstrate neurological compromise. Admin. R. 240, 429, 431, 470-71, 503-04. This is consistent with Sumner's physical examinations, which have demonstrated normal strength, muscle tone, and sensation in the lower extremities without indications of atrophy or neurological deficits. Admin. R. 240, 308-09, 429, 431. A claimant's statements about the severity of symptoms cannot be rejected solely because they are not fully corroborated by objective medical evidence, but the medical evidence remains a relevant factor the ALJ must consider in determining the severity and limiting effects of the claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007), *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005).

In assessing Sumner's credibility, the ALJ discussed her treatment history, correctly observing that it was conservative and effective. Admin. R. 17-18. Sumner has been treated primarily with physical therapy, home exercise, antidepressant medication, and over-the-counter NSAIDs. Three months after her alleged onset of disability, Sumner was taking only Ibuprofen as needed for her back pain. Admin. R. 355. She then had several months of physical therapy. Admin. R. 265. On discharge from physical therapy, Sumner was instructed to continue with home exercise and to start Pilates and pool therapy. Admin. R. 339. Her primary care provider counseled that home exercise and time would be therapeutic. Admin. R. 333.

In July 2008, Sumner resumed physical therapy for intermittent low back and neck pain. She was taking Aleve and using a TENS unit for pain. Admin. R. 261. Her primary care provider recommended a course of work hardening and vocational counseling to increase her work options. Admin. R. 325, 327. At the end of September 2008, Sumner had only occasional back pain and denied pain, numbness, tingling, and weakness in the left leg. Her primary care provider said Sumner's symptoms had "essentially subsided." Admin. R. 304-05. Her intermittent pain ranged from 0 to 2 on a scale of 1 to 10. She was instructed to continue home exercises. Admin. R. 243.

Her regimen of physical therapy and exercise appears to have been effective. Sumner's symptoms reportedly subsided and she did not seek treatment for back pain again until September 2010. Admin. R. 456-60. Such medical improvement from treatment supports an adverse inference as to the credibility of a claim of ongoing disability. *Morgan v. Comm'r of Soc. Sec.*, 169 F3d 595, 599 (9th Cir. 1999); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). Notably, during the 2-year interim while receiving only routine care for such things as sore throat and sinus congestion, Sumner filed her present applications for disability benefits.

In October 2010, Steve Troung, M.D. performed an orthopedic consultation. Sumner reported a low level of back pain and denied numbness, tingling, or weakness. Admin. R. 429. Dr. Troung found no atrophy; Sumner's legs had normal muscle bulk, tone, and strength and her gait was normal. Dr. Troung obtained negative findings on straight leg raise testing and found no evidence of neurologic compromise, radiculopathy, or spinal stenosis. He found that Sumner was deconditioned and recommended a home exercise program with emphasis on overall conditioning and core strength. Admin. R. 431. In contrast to Dr. Troung's benign findings, just two weeks later at an evaluation for physical therapy, Sumner presented with an antalgic gait, positive straight leg

raise tests, and mobility limitations she attributed to subjective pain which produced invalid standing tests. Admin. R. 439. The ALJ found that these inconsistencies diminished the reliability of Sumner's subjective presentations. Admin. R. 18.

In March 2011, Sumner had a neurosurgery consultation for her complaints of chronic back pain. Jerry Hubbard, M.D., found that her symptoms were "not explained by spinal pathology." Admin. R. 558. Dr. Hubbard did not recommend more aggressive treatment. Indeed, none of Sumner's treating physicians recommended anything but conservative measures. Treatment that is conservative or minimal supports an adverse inference as to the claimant's credibility regarding subjective claims of disabling symptoms. *Parra v. Astrue*, 481 F3d 742, 750-51 (9th Cir. 2007); *Meanal v. Apfel*, 172 F3d 1111, 1114 (9th Cir. 1999).

Sumner also received conservative treatment for her alleged mental impairments. Sumner first reported symptoms of depression in May 2009 and began treatment with Zoloft. Admin. R. 309. By July 2009, as Sumner told Maribeth Kallemeyn, Ph.D., she had discontinued the Zoloft and was not taking antidepressant medications. Dr. Kallemeyn performed a psychodiagnostic evaluation and diagnosed mild to moderate depression with reported limitations in concentration and persistence with tasks. Admin. R. 389-93. Sumner did not mention depression or other mental impairments in the following months. In November 2010, Sumner demonstrated no evidence of anxiety or depression. Admin. R. 451-54. In March 2011, Sumner complained of a new onset of depression and received a prescription for Lexapro. Admin. R. 537. In May 2011, she reported great improvement, denied her previous symptoms, and appeared happy without any clinical signs of depression. Admin. R. 522-24. In October 2011, she thought her depression had returned and her dosage of medication was adjusted accordingly. Admin. R. 517-20. It appears from the record that

Sumner's medications were effective in alleviating her symptoms of depression. Impairments that are effectively controlled by medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006).

In making her credibility finding, the ALJ also considered Sumner's work history. Despite her allegation of disability beginning in July 2007, Sumner continued to work for Walmart until September 2008. Admin. R. 321. Notably, during the same month that she quit working, Sumner reported to healthcare providers that she had only intermittent low level pain and their clinical findings were benign. Admin. R. 243, 304-05, 321. Sumner then began working in customer service. While working that job, in November 2008, Sumner reported mild residual back pain, but was noted to be happy and outgoing, without complaints or signs of depression. Admin. R. 318. In January 2009, Sumner quit her customer service job, reportedly because it was fast paced and she felt mentally unable do it. She admitted that her employer did not find fault with her pace of work and wanted her to continue working. Admin. R. 19, 52-53, 389. Notably, she did not report symptoms of depression to any healthcare provider until six months later. When a claimant appears to quit work for reasons unrelated to disability or does not seek treatment for a long time after the alleged onset of a disabling condition, the ALJ may draw an adverse inference as to the claimant's sincerity. *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001).

In reaching her credibility determination, the ALJ considered Sumner's reported daily activities. Sumner testified that she was essentially bedridden, spending 90 percent of a typical day lying down or reclining. Her function reports and statements to healthcare providers, however, reflect greater activity than this. Sumner acknowledged that she engaged in typical housekeeping chores, remained a full time student for extended periods, and worked with horses on a daily basis

at least through July 2009. Admin. R. 16-17, 19. In addition, as noted previously, Sumner's physical examinations consistently showed the absence of atrophy or loss of muscle bulk, tone and strength that would reflect the level of inactivity she alleged. Furthermore, the ALJ correctly found that inactivity was not medically necessary. Sumner's healthcare providers repeatedly instructed her to increase her level of activity with home exercise, core strengthening, pool therapy, Pilates, and work hardening activities. Admin. R. 16-17. Remarkably, although her progress records show that home exercise was a large component of her treatment throughout the period for which she claims disability, Sumner testified that she had not been told she needed to exercise. Admin. R. 59.

To the extent Sumner ignored these recommendations to exercise, her noncompliance also diminishes her credibility. When a claimant makes subjective statements about disabling symptoms, but fails to comply with recommended treatment, an ALJ may reasonably find the subjective statements unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001).

In reaching her credibility determination, the ALJ identified other inconsistencies in Sumner's statements. Admin. R. 19. For example, Sumner reported regularly taking muscle relaxants and opioid pain medications for years, but the record appears to indicate that she relied primarily on NSAIDS for extended periods. Sumner was vague and inconsistent regarding her attendance at work while employed in 2007 and 2008. She testified that she weighed approximately 207 pounds at the hearing and had never weighed that much in her lifetime. Her progress records reflect, however, that her weight often exceeded 207 pounds beginning in 2008 or earlier, and has averaged about 207 pounds for the entire period that is relevant for her claim. Such inconsistencies between statements support an adverse inference as to credibility. *Light v. Soc. Sec. Admin.*, 119

9 - OPINION AND ORDER

F.3d 789, 792 (9th Cir. 1997). The ALJ properly found these inconsistencies diminished Sumner's reliability as a historian and supported her adverse credibility determination. Admin. R. 19.

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific for me to conclude that the ALJ did not arbitrarily reject Sumner's subjective statements. Her reasoning is clear and convincing. Accordingly, the ALJ's credibility determination will not be disturbed. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

### III.    Mental Impairments

Sumner contends the ALJ failed to properly evaluate her mental impairments because she did not include moderate limitations in concentration, persistence, or pace in her RFC assessment. Sumner's argument relies on the evaluation Dr. Kallemeyn performed in July 2009. Admin. R. 389-93. Sumner reported intermittent reduced concentration, but scored in the average range on a test of attention and concentration. Admin. R. 393. Despite Sumner's testing in the average range, Dr. Kallemeyn estimated that she would have moderate difficulty concentrating and persisting with tasks. Admin. R. 393. In the absence of a clinical basis for Dr. Kallemeyn's estimate, it is reasonable to infer that she relied primarily on Sumner's subjective history of intermittent concentration problems. As noted previously, however, the ALJ found that Sumner was an unreliable historian. Admin. R. 19. An ALJ can properly reject a physician's opinion that is premised on the claimant's subjective complaints which the ALJ properly discounted. *Tonapetyan*, 242 F3d at 1149. The opinion is no more reliable than the subjective statements on which it is based.

The ALJ gave little weight to Dr. Kallemeyn's opinion in formulating Sumner's RFC. Admin. R. 20. An ALJ can reject an examining physician's opinion by making findings based on substantial evidence in the record that support clear and convincing reasons for doing so. *Thomas*

*v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ found that Dr. Kallemeyn's evaluation reflected Sumner's limitations while her depression was untreated. Admin. R. 20. As noted previously, Sumner told Dr. Kallemeyn she was not taking any antidepressant at the time of the evaluation. Admin. R. 390. Ample evidence in the record, which Sumner does not challenge, including her own testimony and the progress records of her treating health care providers, shows that while taking antidepressants, she has no limitations in concentration, persistence, or pace. Admin. R. 20. Indeed, Sumner failed to identify any evidence in the record that she has clinical signs of depression or other mental impairment while in compliance with prescribed treatment. The ALJ's findings are supported by substantial evidence and her reason for discounting Dr. Kallemeyn's opinion is clear and convincing.

## VI.    Other Contentions

Sumner contends the ALJ did not comply with Social Security Ruling ("SSR") 02-01p because she failed to consider the effects of her obesity in assessing her RFC. This argument is not supported by the record. The burden of producing evidence and proving the functional limitations that make up a claimant's RFC is on the claimant. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). Here, the record shows that Sumner is obese, but she failed to produce evidence of functional limitations from that condition.

An ALJ is required to consider all evidence of functional impairment from obesity, including any evidence of the functional effects of obesity combined with other impairments. SSR 02-01p, 2000 WL 628049. The ALJ considered the evidence presented and acknowledged that Sumner has a body mass index that is considered Level II obesity by medical criteria. Admin. R. 16. She

11 - OPINION AND ORDER

correctly pointed out that obesity alone does not correlate with any specific degree of functional loss or preclude any specific work-related activity.

Sumner does not identify any evidence of functional limitations from obesity that the ALJ ignored or improperly discounted. She does not identify any evidence of functional limitations from obesity that exceed the limitations in the ALJ's RFC assessment. Accordingly, there is no basis for the court to conclude that the ALJ's evaluation of her obesity was erroneous.

Similarly, Sumner contends the ALJ failed to consider the functional effects of her knee impairment in formulating her RFC assessment. This argument also fails because Sumner did not satisfy her burden of proving any functional limitation from a knee impairment. The record reflects that Sumner complained of a new onset of left knee pain in November 2008, which did not affect her gait or cause her to limp. She was instructed to use NSAIDs, apply ice, and elevate the leg. She was advised to wrap the knee when she engaged in horse riding. Admin. R. 318. Her knee pain apparently resolved; Sumner points to no other evidence of ongoing functional limitations from a knee condition. Accordingly, the ALJ's exclusion of functional limitations from the RFC assessment was not erroneous.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this ___23___ day of August, 2013.

Robert E. Jones, Senior Judge
United States District Court